[No. 25636-0-I.   Division One.   November 25, 1991.]

WILLIAM THOMAS GISSBERG, *Respondent*, v. EVERETT DISTRICT COURT, ET AL, *Petitioners*.

*James William Nelson,* for petitioners.

*John F. Segelbaum* and *Segelbaum & Peale,* for respondent.

GROSSE, C.J. — The State appeals the determination of the Superior Court that William Gissberg was denied his

right to a speedy trial pursuant to CrRLJ 3.3. On the specific facts of this case, we affirm the decision of the Superior Court.

The facts of the case are not disputed. On February 17, 1989, William Gissberg was arrested by Trooper Baker and cited for driving while intoxicated. On February 24, 1989, Gissberg was arraigned in Everett District Court and the case set before Judge Kelly on May 23, 1989. On May 11, 1989, the State filed a motion to continue the trial on the assumption that the arresting trooper would be in training and unavailable for trial from May 22 through May 26.

On May 17, 1989, Gissberg's pretrial motions came on for hearing, but Judge Kelly's cases were being heard that day by a judge pro tempore. The judge pro tempore was a personal friend of Gissberg and the State filed an affidavit of prejudice against him. After the filing of the affidavit the pro tempore judge refused to take any action on the case, *including* sending it back to presiding as required by the court rules. No action was taken on the pretrial motions set for May 17.

On May 23, 1989, the case was called for trial. The arresting trooper was then available because the training operation was postponed for at least that day. The State's position was that pretrial motions could be heard that day and the trial continued to a date *within* the speedy trial deadline. Gissberg specifically objected to the setting of any trial outside the speedy trial deadline, asserting a lack of good cause. Additionally, the defense moved for dismissal, contending the State maneuvered the defense into a position in which it did not have an expert witness present for trial that day in reliance on the State's earlier assertion that it would be unable to proceed to trial on the date originally set, May 23.

Judge Kelly denied dismissal and continued the trial to June 5, 1989. The original 90-day speedy trial deadline passed on May 25. On May 30, Gissberg filed an objection to the trial date of June 5, and moved to dismiss for violation of his right to a speedy trial pursuant to CrRLJ 3.3. On

June 1, the pretrial motions came on for hearing and Judge Kelly denied the motion to dismiss for violation of the right to a speedy trial.

Gissberg sought and obtained a writ of certiorari from the Snohomish County Superior Court with regard to the issue of the denial of a speedy trial. A visiting judge heard the case. At the hearing, the State claimed that the continuance constituted an excluded period under CrRLJ 3.3(h)(2).[1] In the alternative, the State asserted that the disqualification of the pro tempore judge extended the time for trial under CrRLJ 3.3(d)(6).[2]

The Superior Court found the District Court failed to make a timely record of its reasons for continuing the trial, precluding a continuance under CrRLJ 3.3(h)(2). Further, the Superior Court found the facts of this case to be such that CrRLJ 3.3(d)(6) was inapplicable, holding that the lower court had not properly ensured a speedy trial under CrRLJ 3.3. It remanded the case to the District Court with an order to dismiss the charge with prejudice. From that order, the State appeals.

Pursuant to CrRLJ 3.3(a), it is the responsibility of the court to ensure that the trial is timely. *See Seattle v. Hilton,*

---

[1] CrRLJ 3.3(h)(2) allows continuances on the motion of the court or a party "when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of his or her defense." Additionally, the rule states that "[t]he court must state on the record or in writing the reasons for the continuance." Had the State or the trial judge properly counted the days, and/or had the State requested a continuance under the rule, the situation created by the facts in the case present the classic scenario for application of CrRLJ 3.3(h)(2). A continuance would surely have been granted. However, the procedure for application of the rule was not followed and the State is precluded from arguing its application.

[2] CrRLJ 3.3(d) provides for extensions of time for trial and states in part:
"**(d) Extensions of Time for Trial.** The following extensions of time limits apply . . .
" . . . .
"(6) *Disqualification.* If the prosecuting authority or judge becomes disqualified from participating in the case, the defendant shall be brought to trial as prescribed by this rule or not later than 30 days following the disqualification, whichever is later."

62 Wn. App. 487, 491, 815 P.2d 808 (1991). In this case the original 90-day deadline expired on May 25, 1989. Because the parties did not agree to a continuance beyond the 90-day period (*see* CrRLJ 3.3(h)(1)) and because neither of the parties moved for a continuance of the trial beyond the 90-day period, there are only two possible post hoc justifications for the fact that the court set the trial beyond the 90-day period.[3]

In its present posture, two cases are central to the decision in this case. In *State v. Armstead*, 40 Wn. App. 448, 698 P.2d 1102 (1985), the defendant filed an affidavit of prejudice against the scheduled trial judge on the date of the trial (day 89 of the 90-day period). The case was returned to presiding for reassignment. The State then moved for a 5-day extension of time under CrR 3.3(d)(8). The 5-day extension was granted. At trial, the defendant was found guilty and appealed on the ground that his speedy trial right was violated. The court held that the provisions of CrR 3.3(d)(6) (identical to CrRLJ 3.3(d)(6)) permitted the trial to be set anytime within the 30 days following the affidavit of prejudice. Thus, the 5-day extension was not necessary and the trial was timely.

*State v. Pestrin*, 43 Wn. App. 705, 719 P.2d 137 (1986) presented a similar situation. There, the defendant filed an affidavit of prejudice against the assigned trial judge on the 90th day following arraignment. As in *Armstead* the trial court permitted the trial to commence on the 91st day on the ground that CrR 3.3(d)(8) allowed a 5-day extension. The *Pestrin* court also held the 5-day extension was unnecessary "in light of the fact the trial was actually held within the 30-day period provided by CrR 3.3(d)(6)." *Pestrin*, 43 Wn. App. at 708.

---

[3]The State has abandoned its first argument regarding continuances under CrRLJ 3.3(h)(2) in this appeal. It is likely the State recognized the trial court failed to make a timely record of the reasons for the continuance as required for this argument to be valid. *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Kokot*, 42 Wn. App. 733, 713 P.2d 1121, *review denied*, 105 Wn.2d 1023 (1986).

The State argues the justification present in *Armstead* and *Pestrin* exists here and CrRLJ 3.3(d)(6) allows the commencement of the trial on June 5. However, on the instant facts, such reasoning amounts to an overly technical and rigid application of CrRLJ 3.3(d)(6) and to an after-the-fact justification for the District Court's failure to accord the defendant a trial within the mandated limits of CrRLJ 3.3(c)(1). The case here is easily distinguished from the *Armstead* and *Pestrin* cases.

Here, it was the State/prosecuting authority rather than the defendant who filed the affidavit of prejudice. Further, the affidavit was filed against a judge pro tempore who was scheduled only to hear pretrial motions. The trial was at all times scheduled to be heard before Judge Kelly, and in fact was in front of Judge Kelly before the 90-day period expired. Further, it was Judge Kelly who continued the case beyond the 90-day period on the court's own motion. The State failed to object to this setting, only arguing that it wanted a trial date set within the 90-day period. The State did not "take care of its file" by failing to get a hearing on a continuance for entry of a proper written reasoning as to the postponement. Possibly it neglected to discover the fact that the June 5 date was outside the 90-day period. As held by the visiting judge in his decision dated January 9, 1990:

> In view of the oft-stated policy of the rule to ensure speedy trials in criminal cases, and, indeed, the express language of the rule itself (see CrR 3.3(a)), it would be singularly incongruous to allow an extension of up to 30 days any time a judge assigned to hear any *pretrial* matter was disqualified. It makes much more sense, in view of the policy and purpose of CrRLJ 3.3, to hold that CrRLJ 3.3(d)(c) [*sic*] applies to the disqualification of the assigned trial judge, and this Court so holds.

(Italics ours.)

We do not read the rule as expansively as does the visiting trial judge. We do not agree that in *all* cases of a judge hearing pretrial matters assigned to another trial judge a disqualification cannot bring about the application of CrRLJ

3.3(d)(6). However, on the narrow facts presented here, we agree with the decision.

The State argues the rule at issue here is not ambiguous and not subject to judicial construction. *Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 91, 720 P.2d 831 (1986). The State contends the rule contains no limitation to "the" trial judge, or an assigned judge. It argues the plain language of the rule states that when a judge is disqualified, the State has either 30 days of additional time or until the end of the speedy trial period, whichever is longer. Thus, it argues that once the affidavit of prejudice was filed against the judge pro tempore, the time for application of the speedy trial rule did not end until June 17.

■■ However the primary objective of statutory construction is to carry out the intent of the Legislature, which requires the court to consider the language of the statute itself. *State v. Von Thiele*, 47 Wn. App. 558, 736 P.2d 297, *review denied*, 108 Wn.2d 1029 (1987). The same rule applies to the interpretation of court rules and the determination of the intent with which the rule was drafted. *In re McGlothlen*, 99 Wn.2d 515, 663 P.2d 1330 (1983). The rule uses the modifier "the", not "a" or "any" to describe the disqualified judge. The case must be approached under the spirit and intent of the rule.

Our determination turns on the fact that this case was called again after the disqualification, and the opportunity for hearing the pretrial motions and for trial before the assigned judge occurred prior to the expiration of the speedy trial period. It was at this hearing, which we emphasize was held *before* the speedy trial period had expired, that the "fatal error" was made. If the case had not been before the assigned trial judge before the running of the period, the State's argument would be more persuasive. While the State attempted to get the trial set within the time period, no one made the requisite count to assure the court set the case within the required time. The District Court failed to ensure the trial was heard before the expiration of the

speedy trial period and the decision of the Superior Court dismissing the charge is affirmed.

WEBSTER and FORREST, JJ., concur.

Reconsideration denied April 24, 1992.

Review denied at 119 Wn.2d 1020 (1992).